COWART, Judge,
dissenting.
In 1987 the defendant, Anthony D. Fletcher, was convicted of burglary of a dwelling,[1] a second degree felony, and sentenced and committed to the Department of Corrections for a term of 15 years with credit for three days jail time and with the provision that after serving three years of said term, the defendant was to be on probation for the remaining 12 years of the 15 year sentence. This is a true split sentence[2] as distinguished from a probationary split sentence.[3] The defendant was not “sentenced to three years in prison followed by 15 years probation” which is the description of a “probationary split sentence.”
Apparently the defendant served[4] the three year incarceration portion of his split sentence and was on probation when, in 1989, he committed and was convicted of, a new substantive offense of aggravated assault,[5] a third degree felony. An order was entered revoking the defendant’s probation as to the 1987 burglary of a dwelling offense.[6] The sentencing guidelines *517 scoresheet scored the 1987 burglary as the “primary offense,”[7] the 1989 assault offense as an “additional offense at conviction,” [8] and scored certain juvenile offenses committed within three years prior to the 1987 burglary conviction but which were not committed within three years prior to the 1989 assault conviction.[9]
As to the 1989 aggravated assault offense, the trial court sentenced the defendant to five years in prison. Based upon the order revoking the probationary period of the true split sentence on the 1987 burglary offense, the trial court purported to impose a new “sentence” in that case of straight probation[10] for a period of 15 years consecutive to the five year incarceration sentence relating to the 1989 aggravated assault offense.
The defendant appeals his sentence, contending that the trial court erred in scoring his 1987 burglary conviction as the “primary offense,” which permitted the scoring of his juvenile offenses as “prior record”, rather than scoring the 1989 assault conviction as the “primary offense” which would have had the effect of not scoring the juvenile offenses.
The defendant’s position is consistent with Stafford v. State, 573 So.2d 884 (Fla. 5th DCA 1991). Stafford is not authority for a reversal in this case. Stafford holds that if the defendant was not sentenced on some prior offense but put on straight probation and then commits a subsequent offense, and both offenses are before the court for sentencing on one scoresheet, the prior offense cannot be used as the “primary offense” at conviction, although the scoresheet as to the prior “probated” offense recommends the more severe sanction. This is an incorrect view and causes confusion and error and we should recede from Stafford.
When a defendant has pending before the court for sentencing[11] at, or about[12] the same time, two or inore offenses under the guidelines sentencing rule the first determination to make is which scoresheet out of the nine offense categories (Florida Rule of Criminal Procedure 3.701c.) is to be used. That first inquiry is resolved by determining which one offense (“pending before the court for sentencing”) is the “primary offense” which is defined under Florida Rule of Criminal Procedure 3.701d.3. as being that offense the score-sheet for which recommends the most severe sanction.
After that threshold determination is made, as to each and every offense (“pending before the court for sentencing”) for which the defendant has been convicted (other than the primary offense), a second inquiry must be made and that is whether each such other offense should be scored on the one proper scoresheet as “additional offenses at conviction” under Rule 3.701d.4. or as “prior record” under Rule 3.701d.5.a.
Several years ago in a factual context where the defendant (1) had previously been convicted of a “prior” offense and had been put on straight probation[13] as to that offense and (2) had thereafter been convicted of a “subsequent” offense (which inci-dently violated probation on the first offense) and (3) the prior “probated” offense was not the “primary offense” under Rule *518 3.70M.3. (because the guidelines scoresheet for the prior offense did not recommend the most severe sanction), the specific question arose as to whether, under the second inquiry, the prior “probated” offense should be scored as an “additional offense at conviction” (Rule 3.701d.4.) (because his straight probation having been terminated, sentencing for the prior offense was also pending before the court at the same time the subsequent offense was pending for sentencing) or whether the pri- or offense should be scored as “prior record” (Rule 3.701d.5.a).
Faced with this guidelines question the courts generally held that the original offense (on which the defendant had been placed on straight probation in lieu of being sentenced) should be scored as an “additional offense at conviction.” Hallback v. State, 479 So.2d 865 (Fla. 5th DCA 1985); Bradley v. State, 480 So.2d 647 (Fla. 2d DCA 1985), cause dism., 486 So.2d 595 (Fla.1986). For some reason not yet understood by many judges, the sentencing guidelines committee note to Rule 3.701d.5. was amended to change the result reached by the courts in these cases and to provide that in this particular circumstance, the prior offense (as to which straight probation had been violated) would be scored as “prior record” and not as “additional offense” even though that offense was before the court for sentencing. The Florida Bar Re: Rules of Criminal Procedure, 482 So.2d 311 (Fla.1985) (effective July 1, 1986). This amendment had nothing to do with the threshold “first inquiry” determination of whether the prior “probated” offense was to be scored as “primary offense” as distinguished from “additional offense at conviction” or “prior record” which “first inquiry” question is resolved under Rule 3.701d.3. based on whether the scoresheet for the prior offense (as to which the defendant has violated straight probation and for which the defendant is before the court for sentencing) recommended the more severe sanction in which event the prior “probated” offense is scored as “primary offense” (and the score-sheet applicable to that offense is used).[14] Of course, if the prior “probated” offense is scored as the “primary offense,” no issue or question is left as to whether the prior “probated” offense is to be scored as “additional offense at conviction” or “prior record.” For these reasons the amendment to Committee Note d.5. is inapplicable to the threshold determination of whether the prior offense (as to which probation has been terminated) is or is not to be scored as “primary offense,” that determination being decided by the test set out in Rule 3.701d.3.
If the scoresheet for the prior offense for which probation has been terminated recommends a more severe sanction than the scoresheet for any later offense for which the defendant is being sentenced, the prior offense should be scored as “primary offense” (Rule 3.701d.3.) and the later offense which is before the court for sentencing should be scored as “additional offense at conviction” (Rule 3.701d.4.) whether or not the commission of the later offense may have incidentally served to have violated the probation relating to the prior offense. See, Jolly v. State, 502 So.2d 1324 (Fla. 4th DCA 1987).
When an offense as to which the defendant has violated straight probation later becomes one of multiple offenses before the court for sentencing, the mere fact that a defendant has violated probation as to *519 the prior offense is absolutely no reason, under guideline philosophy, guideline rule, logic or common sense, why the prior offense should not be scored as “primary offense” if the scoresheet relating to the prior offense recommends a more severe sanction than the scoresheet relating to any other offense for which the offender stands convicted and is before the court for sentencing at the same time.[15] Stafford was in error in applying the Committee Note relating to the second inquiry to solve the question presented by the first inquiry (which determines which scoresheet is to be used).
This case is complicated by the fact that here the defendant was not placed on straight probation but to the contrary, he has already been sentenced on the prior more serious offense (the 1987 second degree burglary offense) and therefore while the defendant is also “before the court” for the court to consider reinstating the violated probationary status under his 1987 split sentence or recommitting him to incarceration for some or all of the unserved remainder of that true split sentence already imposed in that case, the defendant is not “before the court for sentencing” (3.70M.1) on the prior more serious offense. Poore imposes a guidelines limitation on any recommitment to prison after violation of the condition of probation upon which service of the remainder of a true split sentence has been suspended, but does not explain how, or as of when, this is accomplished under the guidelines.
Using the earlier burglary offense as the “primary offense” at sentencing dictates the use of a Category 5 scoresheet under which the scoring of points would usually result in a sentence less severe than would result from considering the later aggravated assault offense as the “primary offense” at sentencing and using its Category 4 scoresheet. However, under the facts of this particular case, this result is reversed and a more severe sentence results from using the Category 5 scoresheet for the earlier burglary offense because its time frame permits the scoring of some juvenile record that would not be permitted under Rule 3.701d.5.c if the Category 4 scoresheet for the later aggravated assault offense is used. However, this complication and its effect should not influence a judicial construction of the rule in this ease.
The scoring of the defendant’s 1987 conviction for burglary as “the primary offense” at his sentencing on his subsequent conviction is not correct because the defendant has already been sentenced on that offense and therefore that offense is not now “pending before the court for sentencing.” The sentence on the 1989 assault offense should be vacated and this case remanded for preparation of a new score-sheet and resentencing as to that offense. The order placing the defendant on a new 15 year probationary term on the 1987 burglary conviction should also be vacated because the original sentence on the 1987 burglary conviction was a true split sentence and, as explained in Poore v. State, 503 So.2d 1282 (Fla. 5th DCA 1987) and approved in Franklin v. State, 526 So.2d 159, 162-165 (Fla. 5th DCA 1988) (en banc) and in Poore v. State, 531 So.2d 161 (Fla. 1988), when a true split sentence is imposed and the defendant has served the initial incarcerative portion and violates the probationary provision the trial judge does not *520 “resentence” the defendant.[16] The judicial disposition alternatives at that juncture are to either forgive the probation violation and permit the true split sentence probationary-status to continue, or to terminate that probationary status and recommit[17] the defendant to incarceration to serve the balance of the pre-set term of incarceration subject to sentencing guidelines limitations.[18]
The following question should be certified as being of great public importance:
When a defendant is convicted of a more serious offense (i.e., an offense the scoresheet for which would recommend the most severe sanctions (3.701d.3.)) and sentenced to a true split sentence, and subsequently violates the conditions of probation upon which the service of the remainder of the split sentence has been stayed and withheld (§ 948.01(8), Fla. Stat. by the commission of a less serious offense (i.e., an offense the scoresheet for which does not recommend the most severe sanction) and is before the court not for sentencing or “resentencing” but for consideration of recommitment to confinement for the remainder of the true split sentence on the more serious offense and also for sentencing on the subsequent less serious offense, under the sentencing guidelines and under the guidelines limitation on the recommitment to incarceration as to the remainder of the true split sentenced required by Poore v. State, 531 So.2d 161 (Fla.1988),
(1) should two scoresheets be used, with the guidelines scoresheet prepared at the time of the imposition of the original split sentence used, per Poore, to limit the term of the recommitment to incarceration on the remainder of the true split sentence and a new second scoresheet prepared and used in sentencing on the subsequent less serious offense with the subsequent less serious offense scored as the “primary offense” (Rule 3.701d.3.) and the prior more serious offense scored as “prior record” (Rule 3.701.d.5.) OR
(2) should a single scoresheet be used as to the recommitment under the split sentence and for sentencing on the subsequent less serious offense scoring the prior more serious offense as the “primary offense” (because the scoresheet (category 5) relating to the more serious earlier offense (which may include scoring for a juvenile record (Rule 3.701d.5.e)) which would not be scored if the later lesser offense was scored as the “primary offense” and the related (Category 4) scoresheet was used) recommends the more severe sanction, Rule 3.701.d.3.) and the *521 subsequent less serious offense scored as “additional offense at conviction” (Rule 3.701.d.4.), OR
(3) because the defendant has already been sentenced to a true split sentence on the prior greater offense and that offense is not “pending before the court for sentencing” (Rule 3.701d.l. and 4.) before the court for sentencing should a single scoresheet be used scoring the subsequent less serious offense as the “primary offense” and the prior more serious offense as “prior record” (Rule 3.701d.4.)?
PETERSON and DIAMANTIS, JJ., concur.

. § 810.02, Fla.Stat.

. See §§ 948.01(8) and 921.187(l)(g), Fla.Stat.

. See Poore v. State, 531 So.2d 161 (Fla.1988).

. See Green v. State, 547 So.2d 925 (Fla.1989); see also §§ 944.28 and 948.06, Fla.Stat., as amended effective September 1, 1990 (Ch. 89-526, §§ 6, 8 Laws of Florida).

. § 784.021, Fla.Stat.

. The order revoking this probation dated April 3, 1990, erroneously states that originally the "Court suspended the imposition of sentence and placed the aforesaid [defendant] on probation for a term of Fifteen (15) years; three (3) *517 years incarceration followed by 12 years probation.” This misdescription of the original split sentence erroneously suggests that the original disposition was a probationary split sentence or probation with a condition of three years incarceration.

. Florida Rule of Criminal Procedure 3.701d.3.

. Florida Rule of Criminal Procedure 3.701d.4.

. Florida Rule of Criminal Procedure 3.701d.5.c.

.§§ 948.01(3) and 921.187(l)(a), Fla.Stat.

. Although matters such as "prior record” (3.701d.5.) and "legal status at time of offense” (3.701d.6.) and "victim injury” (3.701d.7.) are weighted factors used to arrive at a recommended guidelines sentence the focus at sentencing is still upon "offenses pending before the court for sentencing” (3.701d.l. and 4.). The use of descriptive "offenses at conviction” in 3.701d.3. and 4. tends to confuse this focus.

. See, Foster v. State, 576 So.2d 937 (Fla. 5th DCA 1991).

.§§ 948.01(3) and 921.187(l)(a), Fla.Stat.

. When the committee note to Rule 3.701d.5. was expanded in 1985 to provide that, when simultaneous sentencings took place for new offenses and old offenses for which probation had been previously imposed but subsequently revoked, the earlier offense would be scored as "prior record,” it offered an explanation that was not made a part of the rule:
The commission took this action to clarify its intent concerning the application for scoring purposes of the offense which results in the imposition of probation where the offender commits an offense subsequent to the date probation is imposed and where both offenses are before the court for sentencing and the subsequent offense is scored as “primary offense." [Emphasis added].
The Florida Bar re: Rules of Crim. Proc., 482 So.2d 311, 312 (Fla.1985). The last nine words of the committee's explanation is an acknowl-edgement that the earlier offense could also be scored as the primary offense in accordance with Rule 3.701d.3.

. This case also presents the opportunity to point out for future consideration by the sentencing guidelines commission the results that are possible under the present guidelines rules. This defendant began his criminal career in 1985 with three counts of burglary of a dwelling, and by the time he twice stabbed the victim in the back in his latest crime, he had twenty-one felonies — twenty second-degree felonies and one grand theft. While we do not have a score-sheet in the record which would have scored the latest crime as the primary offense, defendant’s counsel argued at the sentencing hearing that the three-year rule as to juvenile convictions precluded these felonies from being scored. Fla.RXrim.P. 3.701d.5.c. It is difficult to justify requiring an 18-year-old to be conviction-free for the next ten years under Rule 3.701d.5.b in order to eliminate any prior adult record convictions, while requiring a 17-year-old with a juvenile record of twenty-one felonies to be conviction-free only for the next three years in order to obtain the same treatment.

. The subsequent violation of probation in a split sentence serves only to eliminate the condition under which the defendant was released from confinement under the original sentence and the defendant is not resentenced but recommitted to the Department of Corrections for service of the remainder of that original sentence.

. See §§ 944.17(1) and 921.187(1)(Z), Fla.Stat.

. See Poore v. State, 531 So.2d 161 (Fla.1988). Query: Is the guidelines scoresheet that limits recommitment under a true split sentence, per Poore, the original guidelines scoresheet prepared at the time the true split sentence was imposed or is a new guidelines scoresheet prepared which also scores a later substantive offense (such as the 1989 aggravated assault conviction in this case) which is before the court for sentencing? The use of a new scoresheet, with increased scoring relating to matters occurring after the original split sentence, will permit subsequent incarceration under the split sentence in excess of that originally permitted by the guidelines at the time of the imposition of the split sentence, contrary to the purpose for which Poore imposed the guidelines as a limita.tion on recommitment to further incarceration following violation of probation of a true split sentence. If the original true split sentence was limited to the recommended (or permitted) guidelines period of incarceration (plus a one-cell increase for the anticipated violation of probation, see Poore), the recommitment to incarceration upon violation of probation would always be within the original guidelines limitations and there would be no need for the guidelines limitations on recommitment contained in Poore. The original true split sentence might as well be limited (in total of the incarcerative and probationary portions) to the recommended guidelines incarceration period (plus one one-cell bump up for one anticipated violation of probation), if under Poore, the total period of possible incarceration under a split sentence can never exceed that period after violation of probation and recommitment under the original sentence.